Zimmerman, J.
 

 By the language employed in Sections 5546-1 and 5546-2, General Code, the obvious intent of the General Assembly was to impose an excise tax on
 
 every
 
 retail sale made in the state of Ohio of tangible personal property, with certain specified exceptions.
 

 Section 5546-1, General Code, relating to “sales,” and Section 5546-25, General Code, relating to “use,” as they pertain to the instant case, except from taxation only those sales where the purpose of the consumer is to use or consume the thing transferred
 
 directly
 
 in the production of tangible personal property for sale by manufacturing, processing, refining or mining.
 

 The precise question now before the court is whether machinery and equipment purchased for use in mining coal, which coa.l is not sold but is later used in the production of pig iron, are used directly in the production of tangible personal property, within the contemplation of the exceptions referred to above.
 

 This court has had occasion to decide a number of cases involving the Ohio sales and use tax acts and
 
 *371
 
 the exceptions thereto. Most of these cases have been cited and commented upon by counsel in their briefs and upon oral argument, and it would seem in order to summarize briefly the holdings heretofore made.
 

 In
 
 Saunders Mills, Inc.,
 
 v.
 
 Evatt, Tax Commr.,
 
 139 Ohio St., 227, 39 N. E. (2d), 526, it was held that the purchase of motor trucks by a company to transport alfalfa over the public roads from fields leased by the company to plants of the company, where such alfalfa was converted into meal, was subject to taxation for the reason that such trucks were engaged solely in the transportation of alfalfa to dehydrating plants where the actual processing of the alfalfa into meal began.
 

 In
 
 Bailey
 
 v.
 
 Evatt, Tax Commr.,
 
 142 Ohio St., 616, 53 N. E. (2d), 812, it was held that the purchase of equipment used in stripping the soil from natural gravel deposits was excepted from taxation because such equipment was used directly in mining.
 

 In
 
 France Co.
 
 v.
 
 Evatt, Tax Commr.,
 
 143 Ohio St., 455, 458, 55 N. E. (2d), 652, 654, a majority of the court was of the opinion that the purchase of dump cars, movable tracks, etc., used in the transportation of crushed-stone products from a stone crushing and screening plant to yards adjacent thereto for draining, cleansing, blending and reassembling, was excepted from taxation, on the basis that these movements were part of a continuous process to prepare the product for delivery, and that the product was not completed and ready for purchasers until such operations had ended.
 

 In
 
 Dye Coal Co.
 
 v.
 
 Evatt, Tax Commr.,
 
 144 Ohio St., 233, 58 N. E. (2d), 653, the holding was that the purchase of automobile trucks by a mining company for use in hauling coal from the pits to a tipple where such coal was cleaned and graded for shipment, was excepted from taxation, for the reason that such use was a part of mining.
 

 
 *372
 
 In
 
 Kroger Grocery & Baking Co.
 
 v.
 
 Glander, Tax Commr., 149 Ohio
 
 St., 120, 129, 77 N. E. (2d), 921, 926, the court decided that the sale of wrapping materials and containers necessarily used and consumed in producing food and rendering it suitable for marketing was excepted from taxation.
 

 In
 
 Fyr-Fyter Co.
 
 v.
 
 Glander, Tax Commr.,
 
 150 Ohio St., 138, 80 N. E. (2d), 776, the court undertook to distinguish between items which are indispensable in the production of tangible personal property for sale and those which are merely convenient or facilitative thereto, holding that in the former instance the purchase of the items is excepted from taxation and in the latter instance it is not.
 

 In
 
 Terteling Bros., Inc., v. Glander, Tax Commr.,
 
 151 Ohio St., 236, 85 N. E. (2d), 379, there was a diversity of opinion among the judges. The majority expressed the view that taxes were not imposable on the purchase of machinery, equipment and supplies used by one company in a strip-mining operation whereby coal was produced on the land of another company, engaged in the generation and distribution of electric energy, and delivered to the latter company under contract.
 

 In
 
 Tri-State Asphalt Corp.
 
 v.
 
 Glander, Tax Commr.,
 
 152 Ohio St., 497, 90 N. E. (2d), 366, the court held that boom and bucket cranes, the sole function of which is the conveying of ingredients to a place where processing begins and which have no part in the actual processing itself, are not used or consumed directly in the production of tangible personal property for sale by processing and their sale is therefore subject to taxation.
 

 In
 
 Mead Corp.
 
 v.
 
 Glander, Tax Commr.,
 
 153 Ohio St., 539, 93 N. E. (2d), 19, it was decided that the sale of transportation devices, cranes and other tools used
 
 *373
 
 primarily and directly in the process of manufacturing tangible personal property, after such processing had commenced, is excepted from taxation.
 

 From the above summary of cases certain well defined principles are discernible.
 

 To come within the exceptions from taxation imposed by the sales and use tax acts, the sale must be of (1) items necessary and not merely facilitative to the actual business of producing tangible personal property which is to be sold, (2) items used for transporting articles where such transportation is a part of the processing of such articles and (3) items used or consumed during the actual manufacturing or processing.
 

 In other words, for the purchase of an item to be excepted from taxation under the Sales Tax Act or the Use Tax Act the item must be indispensable to and directly connected with the actual manufacture or processing of the particular article to be sold.
 

 In the instant case, it can not fairly be said that the mining of coal is a direct and integral part of the production of pig iron. Here, there are two distinct activities, namely, mining and smelting, and, although they are related in that mined coal is utilized in the production of pig iron, the two are still separate and distinct operations.
 

 It therefore follows that, since mining is not a part of the business of producing pig iron, the purchase of the mining machinery and equipment in issue is subject to taxation. To hold otherwise would be extending an exception to taxation by judicial fiat beyond the limits expressed and intended by the General Assembly in the existing legislation affecting the subject.
 

 The decision of the Board of Tax Appeals is consequently affirmed.
 

 Decision affirmed.
 

 
 *374
 
 Weygandt, C. J., Matthias, Hart and Faught, JJ., concur.
 

 Taft, J., concurs in the judgment.
 

 Stewart, J., dissents.